UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jason A. Czekalski

   v.                                            Civil No. 18-cv-592-PB

Helen Hanks, New Hampshire Department
of Corrections Commissioner; and James
Daly, New Hampshire State Prison Chaplain


**REPORT AND RECOMMENDATION**

Before the court is plaintiff Jason Czekalski's motion for a preliminary injunction (Doc. No. 46). Czekalski, a New Hampshire State Prison ("NHSP") inmate, seeks an order mandating that the defendants desist from interfering with his access to a third party, Attorney Katherine Maggi, who is in an "exploratory phase" of an attorney-client relationship with Czekalski, see July 12, 2019 Aff. of Katherine Maggi ¶ 15 (Doc. No. 53, at 2) ("Maggi Aff."), and that defendants allow Czekalski to have access to Attorney Maggi "under the same terms and conditions he would be allowed access to any other licensed attorney," June 19, 2019 Mot. for Prelim. Inj. (Doc. No. 46, at 2). Plaintiff's motion for a preliminary injunction, to which defendants object, see July 1, 2019 Obj. to Mot. for Prelim. Inj. (Doc. No. 50), has been referred to the undersigned magistrate judge for a report and recommendation.[1]  See June 19, 2019 Order.

---

[1] Czekalski has filed the same motion for a preliminary injunction in each pending case that he has filed in this court.

**Background**

Plaintiff filed this case pro se, asserting in the complaint that defendants, New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks and NHSP Chaplain James Daly, acting in their individual and official capacities, have violated his rights under the First Amendment Free Exercise Clause, the First Amendment Establishment Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), by taking actions and implementing policies that, plaintiff asserts, interfere with his practice of Judaism and favor the practices of other faiths.  Defendants have moved to dismiss, and their motion to dismiss (Doc. No. 11) remains pending.[2]

Plaintiff's instant motion for a preliminary injunction seeks an order directing defendants to remove the impediments to his access to Attorney Maggi, an attorney admitted to the New Hampshire Bar whose brother, Gregory Maggi, is another NHSP inmate.  Czekalski argues that his ability to meet with Attorney Maggi, to decide whether she might help him with his legal work,

---

See Mot. Prelim. Inj., Czekalski v. N.H. State Prison Warden, No. 17-cv-064-JL (D.N.H.) (ECF No. 22); Czekalski v. N.H. Dep't of Corr. Comm'r, No. 17-cv-557-JL (D.N.H.) (ECF No. 59); Czekalski v. N.H. Dep't of Corr. Comm'r, No. 19-cv-121-LM (D.N.H.) (ECF No. 3).  Each of those motions has been referred to the undersigned magistrate judge for a report and recommendation.

[2]Plaintiff has also moved to amend the complaint, adding facts concerning his religious freedom and Establishment Clause claims.  That motion (Doc. No. 37) also remains pending.

has been restricted, as Attorney Maggi's recent attempts to meet with her brother Gregory have been restricted, and the NHSP Warden has suspended all of Attorney Maggi's NHSP visitation privileges for ninety days, beginning on June 14, 2019.

The parties' exhibits describe the circumstances leading up to the suspension of visitation privileges.  Attorney Maggi, who has been on her brother's approved list of family visitors, was recently admitted to the New Hampshire Bar.  When Attorney Maggi appeared at the NHSP seeking to visit her brother in her capacity as an attorney, a corrections officer told her that an NHSP directive indicated she would need to show she was in fact representing Gregory in a pending case before she would be allowed to visit him as his lawyer.  Maggi Aff. ¶ 5.  Prison staff refused Attorney Maggi's requests for a copy of those directives, Maggi Aff. ¶¶ 5, 8, and then denied her next requests to visit her brother.  Attorney Maggi's affidavit indicates she was told by a corrections officer that the notice of appearance she produced at the NHSP, which she intended to file in her brother's case, did not in fact show that she represented him in a pending case.  See id. ¶¶ 6-7.

Prison officials represent that Attorney Maggi expressed her dismay in no uncertain terms.  The June 14, 2019 letter from NHSP Warden Michelle T. Edmark to Attorney Maggi (Doc. No. 50-4) states that Attorney Maggi used profanity and was disrespectful

3

of NHSP staff in the NHSP lobby in the presence of other visitors, including children.  The Warden's letter suspended Attorney Maggi's NHSP visitation privileges for ninety days, effective on June 14, 2019.  For present purposes, this court assumes without deciding that the temporary suspension restricts Attorney Maggi's ability to visit any inmate at the NHSP while it remains in effect.  See Maggi Aff. ¶¶ 9-10.

Czekalski claims that defendants have interfered with his access to Attorney Maggi and his constitutional right of access to the courts.  He asserts: (1) he cannot litigate all of his claims effectively, and at once,

> due to the extreme lack of resources and the obstacles inherent to [being] incarcerated: limited law library access; limited finances; lack of access to word-processing capabilities; lack of access to outside information resources such as the State Fire Marshal (who will not answer requests for information) or the Department of Administrative Services (which takes months to answer simple requests),"

July 15, 2019 Affidavit of Jason A. Czekalski ¶ 10 (Doc. No. 55, at 5) ("Czekalski Aff."); and (2) among lawyers he has contacted, only Attorney Maggi has appeared to be interested in assisting him, id. ¶ 10.  Attorney Maggi's affidavit states that she was contacted by Czekalski (presumably by mail or phone) "regarding the possibility of . . . assist[ing] him in one or more" of his cases, Maggi Aff. ¶ 13, but at this point, she has "no idea of the level of assistance/representation [she] may ultimately provide," Maggi Aff. ¶ 15.  She asserts that

4

exchanging mail with Czekalski has been slow and expensive for him, that he has had problems with his prison telephone account, and that she has not yet set up an attorney account with the prison's telephone services vendor.  Id. ¶ 17.  She avers she needs to meet Czekalski in person before they can decide whether she will provide the type of legal services he wants.  Id. ¶ 18.

## Discussion

I.   Preliminary Injunction Standard

In ruling on a motion for a preliminary injunction, the court "may accept as true 'well-pleaded allegations [in the complaint] and uncontroverted affidavits.' . . .  The [c]ourt may also rely on otherwise inadmissible evidence, including hearsay . . . ."  Bos. Taxi Owners Ass'n v. City of Bos., 180 F. Supp. 3d 108, 127 (D. Mass. 2016) (citations omitted).  The court may rule on a motion for a preliminary injunction on the papers if it has before it "'adequate documentary evidence upon which to base an informed, albeit preliminary conclusion,'" and the parties have been afforded "'a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions.'"  Campbell Soup Co. v. Giles, 47 F.3d 467, 470-71 (1st Cir. 1995) (citations omitted).  Such an opportunity has been afforded here.

"'A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right.'" Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).  "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted).  Irreparable harm and the likelihood of success weigh most heavily in the analysis.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Voice of the Arab World, 645 F.3d at 32.  The burden of proof is on the movant.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

II.  Irreparable Harm

As to irreparable harm, Czekalski asserts he is suffering harm, warranting the immediate relief he seeks, as prison officers "are routinely violating his rights"; his ability to file more lawsuits pro se is limited by his lack of resources; and Attorney Maggi is "the one attorney he has been able to find

6

[who] will help him." July 22, 2019 Plf.'s Response to Defs.' Obj. to Mot. Prelim. Inj. (Doc. No. 55), at 2.

"Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Id.

There are layers of speculation and surmise in Czekalski's assertion of irreparable harm. As to his claims of routine violations of his rights, Czekalski simply lists legal theories or causes of action like "RLUIPA," racketeering and consumer protection statutes, and facts about prison conditions, like the alleged "Preferential treatment of LGBT inmates," "Massive overcrowding" up to 240% of design capacity, "Mailroom irregularities," "Diet and food safety issues," and "Additional medical claims," Czekalski Aff. ¶ 13, without offering sufficient allegations to allow this court to determine whether those issues form the basis of claims that are non-frivolous and would survive this court's screening. See 28 U.S.C. § 1915A. And Czekalski's assertions provide no evidence that damages would not adequately compensate him for any rights-violations he may suffer.

7

Nor is there a non-speculative link between the suspension of Attorney Maggi's visitation privileges, and Czekalski's alleged inability to file and litigate such claims at an effective pace.  The suspension of visitation privileges will end in September 2019.  Czekalski, an active pro se litigant and previously a practicing lawyer, has demonstrated an ability to move for continuances or seek other relief as necessary to accommodate delays resulting from his circumstances.  In the meanwhile, correspondence between Czekalski and Attorney Maggi remains a means they could use to advance their negotiations or transfer information.  And the record indicates that Attorney Maggi could appeal the temporary suspension under N.H. Code Admin. R. COR 305.06,[3] see Doc. No. 50-4, to limit its scope or duration, or, she has been told that she could seek clarification from the Warden as to whether she could visit an inmate like Czekalski in her capacity as an attorney while she

---

[3]The cited administrative regulation provides as follows:

> Persons desiring to re-enter [DOC] facilities, once being removed or debarred, shall not re-enter said facilities without filing a complaint pursuant to [N.H. Code Admin. R.] Cor 200 or requesting the [DOC] commissioner . . . or their designee to have the visits restored.  The commissioner or designee shall render a written decision based on an assessment of future risks, rehabilitative needs of the person under department control . . . and security of the institution.

N.H. Code Admin. R. Cor 305.06.

remains subject to a visitation restriction, see Maggi Aff. ¶ 9. There is no indication that an appeal or request for clarification, if pursued, would be fruitless. In short, Czekalski has failed to demonstrate that he will likely suffer any irreparable harm in the absence of a preliminary injunction. Accordingly, the district judge should deny his motion for a preliminary injunction.

III. Likelihood of Success

Czekalski also fails to make the requisite showing of a likelihood of success on the merits. "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citations omitted). Here, plaintiff bases his motion on claims regarding his access to the courts that he has not previously sought to add to this case, and which arise from incidents involving other parties, that are unrelated to the facts forming the basis of his existing claims about his practice of Judaism. The standard that applies for deciding whether to allow such new claims to be joined with existing claims in one case, Fed. R. Civ. P. 18(a), may not work in his favor here. Cf. George v. Smith, 507 F.3d

605, 607 (7th Cir. 2007) (in general, "[u]nrelated claims against different defendants belong in different suits," to "ensure that prisoners pay the required filing fees," and to prevent them from avoiding exposure to 28 U.S.C. § 1915(g)'s "three strikes" provision).

Furthermore, to plead an access to the courts claim upon which relief can be granted, Czekalski must allege that defendants have actually injured him, with respect to his ability to pursue a nonfrivolous claim that he has a right to litigate.  See Lewis v. Casey, 518 U.S. 343, 349-52 (1996). Czekalski has asserted that his ability to file new cases pro se has been limited by a number of factors connected with his incarceration including his indigence and the failure of third parties to respond to his inquiries, see Czekalski Aff. ¶ 10, and he asserts that Attorney Maggi is the first attorney to express an interest in his claims, and she provides him with his first opportunity to address "these harms in a systematic manner."  Id. ¶ 12.  While the record suggests that Attorney Maggi might be willing to help Czekalski, and that his ability to finalize arrangements with her is slowed by the suspension of her visitation privileges, the evidence does not demonstrate that Czekalski has suffered any actual injury in his existing cases, or that his ability to file new, non-frivolous claims is presently being prevented, because of defendants' actions.

10

Finally, Czekalski has admitted that he did not complete the process of exhausting his administrative remedies on his claims regarding Attorney Maggi before raising them for the first time in his motion for a preliminary injunction. The Prison Litigation Reform Act ("PLRA"), however, generally requires inmates to exhaust their available administrative grievance remedies before filing new claims, see 42 U.S.C. § 1997e; Jones v. Bock, 549 U.S. 199, 211 (2007). Czekalski's failure to show a strong likelihood of success on the merits, in addition to his failure to demonstrate irreparable harm, warrants an order denying his motion for a preliminary injunction.

## Conclusion

For the foregoing reasons, the district judge should deny the motion for a preliminary injunction (Doc. No. 46). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 8, 2019

cc:   Jason A. Czekalski, pro se
      Lawrence M. Edelman, Esq.

12