UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jason A. Czekalski

   v.                                                            Case No. 18-cv-592-PB

Helen Hanks, New Hampshire Department
of Corrections Commissioner; and James
Daly, New Hampshire State Prison Chaplain

## REPORT AND RECOMMENDATION

Before the court is New Hampshire State Prison ("NHSP") inmate Jason Czekalski's "Motion for Expedited/Emergency Protective Order for Evidence and/or Legal Resources" (Doc. No. 72) ("Prelim. Inj. Mot."). That motion has been referred to the undersigned magistrate judge for a hearing, as necessary, and issuance of a Report and Recommendation, to the extent plaintiff seeks a preliminary injunction. See Dec. 17, 2019 Order. The matter has been fully briefed. See Doc. Nos. 72, 75. A status conference relating to the motion was held on December 19, 2019, at which Mr. Czekalski appeared pro se and defendants appeared through counsel. An evidentiary hearing is unnecessary.

## Background

Mr. Czekalski filed this case pro se, asserting in the complaint that defendants, New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks and NHSP Chaplain James Daly, acting in their individual and official capacities,

violated his rights under the First Amendment Free Exercise Clause, the First Amendment Establishment Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), by taking actions and implementing policies that interfere with his practice of Judaism and that favor other faiths.  Mr. Czekalski's RLUIPA claims include Claim 3, which asserts that DOC rules on the size and number of books an inmate may maintain in his cell, and the lack of secure book storage in the Chapel library, have impeded his access to some books he may use, or want to use, in his faith practices.

DOC Policy and Procedure Directive ("PPD") 9.02, in pertinent part, states that inmates in the general prison population in the NHSP and other DOC facilities may keep up to eleven books or magazines in their cells, along with an electronic tablet.  See Doc. No. 75-2, at 17; Doc. No. 75-3.  The maximum size of each book an inmate may possess is 9" x 12", while 15" x 17" is the maximum size of each allowable magazine.  See Doc. No. 75-2, at 6; Doc. No. 75-4.  An inmate who has accumulated books or magazines exceeding those limits may send the excess or over-sized items to a designated individual outside the facility, or the inmate may donate them to the prison or chapel library.  See Doc. No. 75-2, at 3; Decl. of Maj. Jon H. Fouts, Jan. 8, 2020 ("Fouts Decl.") ¶ 5 (Doc. No. 75-1, at 2).  In addition, if books and magazines have been

confiscated because the inmate has too many in his cell, the inmate may exchange or discard an equal number of books or magazines he has kept to recover those that were confiscated. See Fouts Decl. ¶ 18 (Doc. No. 75-1, at 5).

The limits on books, magazines, and other cell property in PPD 9.02 are designed to manage the material inmates maintain in their cells. See Fouts Decl. ¶ 6 (Doc. No. 75-1, at 2). An interest in reducing the "fire load" of combustibles; in keeping cells accessible in the event of an emergency; and in reducing the places an inmate can hide drugs, weapons, and other contraband are the facility's justifications for those restrictions. See id. ¶¶ 6-17 (Doc. No. 75-1, at 2-5).

On December 11, 2019, NHSP corrections officers searched Mr. Czekalski's cell, inventoried, and removed books and magazines that they deemed to be in excess of the limits prescribed by PPD 9.02. Fouts Decl. ¶ 18 (Doc. No. 75-1, at 5). NHSP Maj. Jon Fouts personally directed that the books and magazines taken from Mr. Czekalski be marked and stored in the facility's property room. Id. At the status conference held in this case on December 19, 2019, counsel for defendants represented that he had taken steps to ensure that the items taken from Mr. Czekalski's cell would be preserved.

On December 12, 2019, one day after the cell search at issue, Mr. Czekalski signed the instant preliminary injunction

motion and placed it in the mail for filing in this case. See Prelim. Inj. Mot. (Doc. No. 72, at 3). In that motion, Mr. Czekalski has described the publications taken from his cell as including four or five books from the NHSP Chapel library that he has used "as part of Chapel-based Jewish study or [as] evidence/resources in this action"; three of his own books he has similarly used "for Jewish studies and/or as evidence/ resources"; and approximately fifty "Jewish-oriented magazines," which he planned to use in this case "to show the nature and scope of Judaism and Jewish Studies, as well as what it means to be 'Jewish.'" Prelim. Inj. Mot. ¶¶ 4(a)-(c), at 1-2. Mr. Czekalski, who plans to dispose of the "vast bulk of the magazines upon the completion of this action," further asserted in his motion that he had ordered five more books from a Jewish book publisher, to use "as evidence/resources" in this case, which a property officer has told him he might not receive. Id. ¶¶ 7-8, 10, at 2-3. In his motion, Mr. Czekalski seeks an order directing defendants: to return all of the books and magazines taken from him on December 11, 2019; to allow him to receive the five books he had ordered from a Jewish publisher but not yet received; and to cease and desist from harassing him while this case is pending. Id. at 3.

At the December 19, 2019 status conference relating to the preliminary injunction motion, Mr. Czekalski stated on the

4

record that he had not submitted an Inmate Request Slip ("IRS") requesting that prison officials make arrangements to allow him access to any of the books and magazines that were taken from him on December 11, 2019.  As of January 8, 2020, Mr. Czekalski had not notified any NHSP officer as to whether he wanted any of the books and magazines that were confiscated to be: donated or sent back to the Chapel library; exchanged for an equal number of books or magazines kept in his cell; mailed to, or picked up by, any particular person outside the facility; or simply discarded.  Fouts Decl. ¶ 18 (Doc. No. 75-1, at 5).

## Discussion

I.  Preliminary Injunction Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted).  The likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32

5

(1st Cir. 2011).  The burden of proof is on the movant.  See Esso Std. Oil Co., 445 F.3d at 18.

II.  Irreparable Harm

A party seeking an injunction must show that irreparable harm is likely to result absent a preliminary injunction. Glossip, 135 S. Ct. at 2736.  "[T]o be entitled to a forward-looking remedy, a plaintiff must satisfy the basic requisites of equitable relief -- the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." Joyce v. Town of Dennis, 720 F.3d 12, 26 (1st Cir. 2013) (citations and internal quotation marks omitted).  "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

Plaintiff asserts that he accumulated all of the magazines and books that were taken from his cell over the course of "the last three-and-one-half years in preparation for this case," and that the seizure and loss of day-to-day access to those items is "prejudicially hinder[ing]" him "in preparing his case any further."  Prelim. Inj. Mot. ¶¶ 6, 9, 10, at 2-3.  He has further alleged that he plans to dispose of most of the magazines that were taken from his cell after this case is over.

In other words, the harm he asserts appears to relate to his litigation capacity in this case at this time, and not to his religious practices, per se.

On the record before the court, such harm appears speculative. Plaintiff has not asked prison officials for permission to exchange the materials presently in his cell for any specific similarly-sized items he needs that are in storage. Plaintiff did not attempt to use the prison's grievance process to obtain access to any of the books and magazines at issue, and he has not demonstrated that the available administrative procedures cannot provide him with adequate relief.

Furthermore, while plaintiff is proceeding pro se, he is not litigating this action without assistance; he has disclosed Rabbi Robin Nafshi as an expert witness whom he plans to call to testify regarding the scope of Jewish religious practices, including matters for which he asserts he would use the contents of the confiscated publications to demonstrate. Mr. Czekalski has not shown that the admission of those publications would not be cumulative of Rabbi Nafshi's testimony. Nor has he demonstrated that he cannot follow the procedures in PPD 9.02 to designate Rabbi Nafshi or another individual outside the prison to hold such items for him until he needs to present them in this case. And plaintiff has neither argued, nor demonstrated, that any impediment to his access to religious materials

7

presented by the out-of-cell storage of those books and magazines presents any irreparable injury to his religious practices, particularly where he may be able to recover access to the books and magazines without a court order by exchanging those texts for similar items that he has retained in his cell or by donating them to the chapel library.[1]

Finally, Mr. Czekalski's concern for the fate of the five books he has ordered is entirely speculative; as is his assertion that he may suffer harassment while this case is pending.  Nothing before this court suggests that the officer who told Mr. Czekalski he will not receive the five books he ordered is in the chain of command of prison officials responsible for screening or delivering books ordered directly from a publisher, and even if that officer's prediction about those books were credited as true, plaintiff has not demonstrated that he cannot obtain adequate relief relating to the delivery of those books through the grievance process.  In addition, defendants have offered Maj. Fouts's sworn statement regarding the legitimate safety and security purposes of the search of inmate cells for excess property and the reasons why excess or over-sized books may be confiscated; nothing suggests

---

[1] Mr. Czekalski asserts that Jewish books have disappeared from the library in the past.  The record before this court suggests, however, that steps have been taken to secure those books.  See Decl. of James P. Daly ¶¶ 17-18 (Doc. No. 79-5, at 5).

8

that Mr. Czekalski is suffering any ongoing harassment relating to those search or otherwise, which might warrant court intervention.  The present record thus does not support a finding that plaintiff will suffer any irreparable harm in this case, in the absence of the court-ordered relief he seeks.

III. Likelihood of Success

   The claims upon which Mr. Czekalski is basing his request for a preliminary injunction concern the confiscation of books and magazines that occurred after he filed this action, and his fears that five new books he has ordered he might not be delivered, and/or that he may be subjected to harassment while this case is pending.  Mr. Czekalski has not previously sought leave to add allegations relating to those matters to this case through any motion to amend or supplement the complaint.  Insofar as such matters have not yet been made part of the pleadings here, Mr. Czekalski has not demonstrated a likelihood of success on the merits of the claims arising from those incidents at this time.

   Furthermore, Mr. Czekalski filed the instant motion for a preliminary injunction one day after the December 11 cell search, and before he received any notice suggesting that the facility had in fact received the five books he ordered.  The Prison Litigation Reform Act ("PLRA") generally requires inmates

to exhaust their available administrative grievance remedies before filing new claims, see 42 U.S.C. § 1997e; Jones v. Bock, 549 U.S. 199, 211 (2007). Mr. Czekalski thus faces a formidable PLRA exhaustion defense to any new claim he may seek to litigate, arising from such incidents that occurred or may yet occur after he filed this action. Coupled with his failure to demonstrate irreparable harm, those facts warrant an order denying his motion for a preliminary injunction.

## Conclusion

For the foregoing reasons, the district judge should deny plaintiff's "Motion for Expedited/Emergency Protective Order for Evidence and/or Legal Resources" (Doc. No. 72). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 2, 2020

cc: Jason A. Czekalski, pro se
    Lawrence M. Edelman, Esq.
    Anthony Galdieri, Esq.