UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jason A. Czekalski

v.                                    Case No. 18-cv-592-PB
                                      Opinion No. 2022 DNH 021
Helen Hanks, Commissioner,
New Hampshire Department of
Corrections

**MEMORANDUM AND ORDER**

Jason A. Czekalski, a Jewish inmate at the New Hampshire
Department of Corrections ("NHDOC"), sued the NHDOC Commissioner
Helen Hanks after she denied his requests for various religious
accommodations.  Before me is the Commissioner's motion for
summary judgment on his claims that the Commissioner violated
the Establishment Clause when she denied (1) his requests for
delivery of food to his cell (so-called cell feeds) to
accommodate his daily morning prayers and his observance of the
Sabbath, and (2) his request to wear a head covering of his
choice.[1]  I grant the Commissioner's motion because Czekalski
failed to exhaust his administrative remedies with respect to
the cell feed claims, and his head covering claim fails on the
merits.

---

[1] Czekalski also alleged that the Commissioner violated his
rights under the Religious Land Use and Incarcerated Persons Act
("RLUIPA").  I addressed the RLUIPA claims in a prior order,
where I denied the Commissioner's motion for summary judgment
regarding cell feeds but granted it as to the head covering
claim.  See Czekalski v. Hanks, 2020 DNH 212, 2020 WL 7231358,
at *22-*24 (D.N.H. 2020).

## I.  BACKGROUND[2]

Czekalski has practiced his Jewish faith while incarcerated at the NHDOC.  Czekalski prays before breakfast every morning for about forty-five minutes to an hour.  He claims that because he needs to pray, he cannot attend breakfast when his unit is called to the chow hall.  Instead, he prepares his own breakfast from the food he buys in the commissary.  He would prefer to have breakfast delivered to his cell, a process known as a "cell feed."

Czekalski also observes a weekly Sabbath beginning at sundown on Friday and ending at sundown on Saturday.  He observes a prohibition on work during that time and also claims that he cannot leave his unit's yard.  That restriction means that he cannot walk to the chow hall for dinner on Friday during December and January (because of the early sunsets) and for any meal on Saturdays.  In lieu of chow hall meals, he eats food from the commissary, but he would prefer to have cell feeds.

Czekalski also covers his head at all times as a part of his religious practice.  Although the prison generally does not allow inmates to wear head coverings indoors, it makes an exception for inmates who wear yarmulkes.  Czekalski keeps one

---

[2] I provided a detailed overview of the case in my prior order addressing the parties' cross-motions for summary judgment.  See Czekalski, 2020 WL 7231358, at *2-*9.  I summarize here only those facts relevant to the claims at issue in this motion.

or two yarmulkes in his cell, and he wore a yarmulke for court appearances in this case.  Still, Czekalski considers a snug knit cap, which inmates are allowed to wear outdoors, to be a better head covering than a yarmulke because it stays on his head.  Correctional officers have told him that he cannot wear a knit cap indoors.

The prison had a three-step grievance procedure during the relevant time that began with Inmate Request Slips at Level 1. The next level, Level 2, is satisfied by making a grievance to the prison warden.  Level 3 mandates the filing of a grievance with the Commissioner.  The grievance policy required sufficient detail to show the nature of the complaint or request.  Matters for grievance included requests for assistance or services, requests for consideration of a matter in which the inmate believed he was improperly or unfairly treated, and requests for reconsideration.

In February 2018, Czekalski filed a grievance in which he requested daily breakfast cell feeds to accommodate his morning prayer schedule.  He also mentioned that he might demand additional cell feeds during the Sabbath and then raise the issue in a lawsuit.  His request was denied at Level 1 because the prison chaplain was informed by a consulting rabbi that no cell feeds were needed for religious accommodation.  Czekalski

appealed the denial through the grievance system.   The
Commissioner responded as follows:

> Dear Resident Czekalski,
> In review of your request, cell feeds are not
> necessary to accommodate your religious needs.
> Sabbath does not by practice limit your ability to go
> to the designated meal times while still engaging in
> the 3 times a day prayer as others who practice your
> same faith are able to demonstrate [in] our
> facilities.

Doc. No. 113-1, at *5.  Czekalski did not include in the record
any further appeals about cell feeds.

With respect to his head covering, Czekalski filed a
grievance in November 2017, asking the prison staff to permit
him to wear his knit cap as a religious head covering.  After he
became dissatisfied with the chaplain's responses on the matter,
he appealed.  Director of Community Corrections Kim McKay
responded on behalf of the Commissioner, stating that a "knit
cap is not considered a religious head covering."  Doc. No. 113-
1, at *12.  Czekalski has not included any other appeals
pertaining to head coverings.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A material fact is one that "'carries with it
the potential to affect the outcome of the suit.'"  French v.

Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quoting Santiago-
Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st
Cir. 2000)).  A material fact is in genuine dispute if "'a
reasonable jury could resolve the point in the favor of the non-
moving party.'"  Id. (quoting Santiago-Ramos, 217 F.3d at 52).
The court construes the record in the light most favorable to
the nonmoving party.  Benson v. Wal-Mart Stores E., L.P., 14
F.4th 13, 17 (1st Cir. 2021).  Nevertheless, the court will not
consider "conclusory allegations, improbable inferences, [or]
unsupported speculation."  Lima v. City of E. Providence, 17
F.4th 202, 206 (1st Cir. 2021) (quoting Mulloy v. Acushnet Co.,
460 F.3d 141, 145 (1st Cir. 2006)).

### III.  <u>ANALYSIS</u>

The Commissioner moves for summary judgment on Czekalski's
Establishment Clause claims.  She argues that Czekalski did not
exhaust his administrative remedies with respect to those claims
and that she is entitled to qualified immunity.  Czekalski
objects.  I address the claims in turn.

A.  <u>Cell Feed Claims</u>

Under the Prisoner Litigation Reform Act, a prisoner is
barred from bringing claims challenging prison conditions under
42 U.S.C. § 1983 "until such administrative remedies as are
available are exhausted."  42 U.S.C. § 1997e(a).  That
requirement provides an affirmative defense that a defendant may

raise.  Jones v. Bock, 549 U.S. 199, 216 (2007).  The defendant
bears the burden of showing that administrative remedies were
available and that the plaintiff failed to exhaust them.  See
Casanova v. Duboi, 304 F.3d 75, 77 n.3 (1st Cir. 2002).  The
prison's grievance procedure provides the boundaries of proper
exhaustion.  See Jones, 549 U.S. at 218.

A prisoner is required to properly exhaust all available
administrative remedies for each claim he brings under § 1983.
Woodford v. Ngo, 548 U.S. 81, 90 (2006).  This means that the
prison must be given the opportunity to address each issue on
the merits.  See id.  I agree with the Commissioner that
Czekalski's grievances about his cell feed requests were
insufficient to put the prison on notice of his claim that the
prison was establishing a state religion or favoring one
religion over another.[3]

Czekalski contends that the Commissioner violated the
Establishment Clause because she denied his cell feed requests
on the ground that other Jewish inmates did not require such
accommodations.  According to Czekalski, this amounted to
favoring a practice of Judaism that was different from his own.

---

[3] To the extent Czekalski argues that the Commissioner waived the
exhaustion defense, I already rejected his argument in my prior
summary judgment order.  See Czekalski, 2020 WL 7231358, at *10-
*12.  He cites no authority that would give me cause to
reexamine my decision.

But nothing in Czekalski's grievance indicated to the Commissioner that his morning prayer and Shabbat practices were an idiosyncratic practice of the Jewish faith.  Nor does he point to evidence that the Commissioner was otherwise on notice that his practices were distinct from the practices of other Jewish inmates who attend chow hall meals during scheduled times.  Further, after he received the Commissioner's response, Czekalski did not follow up with a claim that her general characterization of Jewish inmates' practices amounted to establishing a state religion or preferring one denomination over another.  Without more, it cannot be said that Czekalski gave the prison the opportunity to address the merits of his claim that the denial of his cell feed requests violated the Establishment Clause.  Accordingly, he has failed to exhaust his administrative remedies for those claims.

     B.  <u>Head Covering Claim</u>

The prison allows Jewish inmates to wear yarmulkes as a religious accommodation.  Czekalski contends that this rule violates the Establishment Clause because any type of head covering satisfies the religious requirement, and he would prefer to wear a knit cap.  In other words, he does not allege that a yarmulke amounts to an impermissible accommodation, only that he would prefer more choices when it comes to a head covering.  Neither the complaint nor Czekalski's objection to

the motion shows that his preference is based on an idiosyncratic practice of his faith.  Instead, he cites social reasons to explain why he would prefer to wear a knit cap rather than a yarmulke.  That is not enough to show that the prison's rule permitting a yarmulke over a knit cap amounts to establishing one sect of Judaism over another.  Because the prison has accommodated Czekalski's religious practice without establishing a state religion or exhibiting denominational preference, his claim is doomed.[4]

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for summary judgment (Doc. No. 112) is granted.  The sole remaining claims in this case allege that the Commissioner's denials of Czekalski's cell feed requests violated RLUIPA (Claims 4a and 4c).  A status conference will be scheduled to discuss how to address those remaining claims.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 28, 2022

cc:  Jason A. Czekalski, pro se
     Counsel of Record

---

[4] I do not reach the Commissioner's argument that Czekalski failed to exhaust his head covering claim because his claim obviously fails on its merits.

8